**SO ORDERED.**

**SIGNED this 26 day of January, 2009.**

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

MALCOLM MCFALL BABB,

        Debtor.                        Case No. 06-03003-8-JRL
                                                            Chapter 7

_____

**ORDER**

This matter came before the court on the Chapter 7 Trustee's motion for approval of compromise with The Estate of Charles L. Watson, Eleanor G. Watson, Pamela Watson Fehlig, as personal representative of the estate of Charles L. Watson, CLW Investments, Inc. d/b/a Salt Marsh Cove and Wilbur M. McLamb (the "Claimants") and the debtor's objection to claim. On December 16, 2008, the court conducted a hearing in Wilmington, North Carolina. This order confirms and provides the rationale for the oral ruling at the conclusion of the hearing allowing the motion for approval of compromise.

**BACKGROUND/PROCEDURAL HISTORY**

The proposed compromise and proof of claim at issue in this case stem from a dispute in ownership of property and the resulting litigation that transpired in the South Carolina circuit

courts. The dispute between the debtor and the Claimants originated from the purchase of property in Horry County, South Carolina. In 1991, Carl Meares ("Meares"), Charles Watson ("Watson"), and Brenda Babb placed a successful bid on property known as Little River Campground (the "Campground") in the amount of $400,000.00. Subsequently, Meares, Watson, and Brenda Babb formed a corporation, LRCI, and named the debtor as its president and director. Meares, Watson, and Brenda Babb each contributed approximately 1/3rd of the purchase price, with the intention of deeding the Campground to LRCI. In addition, Watson prepared stock certificates conveying a 1/3rd shareholder interest in LRCI each to Meares, Watson, and Brenda Babb. However, on the day prior to closing, the debtor instructed the closing attorney to deed a 1/3rd interest in the Campground to Brenda Babb. As a result, a special warranty deed was executed which granted a 2/3rds undivided interest in the Campground to LRCI and a 1/3rd undivided interest to Brenda Babb.

In 1993, Meares, Watson, and Brenda Babb discussed purchasing 4.2 acres of real property adjacent to the Campground and known as Salt Marsh Cove. The debtor and Wilbur McLamb ("McLamb") also participated in these discussions. Subsequent to these discussions and prior to the closing on the Campground, Watson and McLamb purchased Salt Marsh Cove and transferred it to CLW Investments. Neither the debtor nor Brenda Babb owned an interest in CLW Investments.

On June 24, 1997, the debtor filed suit against the Claimants (the "Underlying Case"). The original plaintiffs in the Underlying Case were Little River Campground, Inc. ("LRCI"), the debtor, as an officer and a director of LRCI, and Brenda Babb, individually. The complaint alleged that the shareholders of LRCI were adversely effected by the purchase and transfer of Salt

2

Marsh Cove to CLW Investments and asserted causes of action for civil conspiracy, conversion, unjust enrichment, negligence, breach of fiduciary duty, and fraud. The plaintiffs sought relief in the form of monetary damages. Subsequently, between 1998 and 1999, the debtor filed approximately three lis pendens covering Salt Marsh Cove.

On August 7, 1998, the debtor amended the complaint to add claims on behalf of Brenda Babb "as a shareholder in [LRCI]." By amending the complaint in this manner, the debtor and Brenda Babb asserted that she owned a 1/3rd shareholder interest in LRCI, in addition to her 1/3rd undivided interest in the Campground. In April 2001, the Claimants filed an amended answer to the complaint, alleging that the complaint failed to assert a cause of action on behalf of LRCI or the debtor. Pursuant to an order dated June 1, 2001, the South Carolina Circuit Court dismissed with prejudice the claims asserted on behalf of LRCI and the debtor in the Underlying Case.

On June 15, 2001, the Claimants filed and served an amended answer and counterclaim in which they challenged Brenda Babb's status as a shareholder in LRCI. On January 16, 2004, the Claimants asserted a declaratory judgment action against Brenda Babb to determine whether she was a shareholder of LRCI. Pursuant to an order dated June 10, 2004, the South Carolina Circuit Court found that Brenda Babb voluntarily and intentionally relinquished her right to a 1/3rd shareholder interest in LRCI when she received a 1/3rd undivided interest in Little River Campground. As a result, the circuit court held that Brenda Babb was no longer a shareholder in LRCI. Brenda Babb appealed the circuit court's decision and the South Carolina Court of Appeals affirmed in May 2008. Brenda Babb's petition for writ of certiorari to the South Carolina Supreme Court was pending as of the date of this hearing.

Also in 2001 and subsequent to the dismissal of the debtor's claims, the Claimants brought

an action against the debtor for, *inter alia*, abuse of process and malicious prosecution (the "Claimants' Action"). This lawsuit was tried during February and March of 2006. During trial, the South Carolina Circuit Court granted the debtor's motion for a mistrial after certain evidence was determined to have been erroneously admitted. The re-trial of the Claimants' Action was stayed when the debtor filed bankruptcy.

The debtor filed for relief under Chapter 13 of the Bankruptcy Code on September 22, 2006 and his case was converted to Chapter 7 on February 26, 2007. On July 2, 2007, the Claimants filed an amended proof of claim in the amount of $683,137.90 for, *inter alia*, attorney's fees and costs incurred in litigation between the debtor and the Claimants. The debtor objected to the amended claim and the Claimants filed a motion to dismiss the debtor's objection. Subsequently, the Trustee and the Claimants reached a compromise with respect to the allowance and amount of the Claimants' proof of claim (the "Compromise"). On July 16, 2008, the Trustee filed a motion to approve the Compromise with the Claimants to allow a modified claim in the amount of $175,000.00. In response, the debtor asked the court to deny the Trustee's motion for compromise and objected to the claim of $175,000.00.

## **DISCUSSION**

Under § 363 of the Bankruptcy Code, after notice and a hearing, the trustee may "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The Federal Rules of Bankruptcy Procedure provide that "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED R. BANKR. P. 9019(a). The court may approve a compromise if it is determined to be "fair and equitable" and in the best interests of the estate. U.S. ex rel. Rahman v. Oncology Assoc., P.C., 269 B.R. 139, 150

(D. Md. 2001) (citing <u>In re Flight Transp. Corp. Sec. Litig.</u>, 730 F.2d 1128, 1135 (8th Cir. 1984), <u>cert. den.</u>, 469 U.S. 1207 (1985)); <u>see also</u> <u>St. Paul Fire & Marine Ins. Co. v. Vaughn</u>, 779 F.2d 1003, 1010 (4th Cir. 1985) (a debtor's objection to approval of compromise is not fatal if "it is found to be in the best interests of the estate as a whole."). The Supreme Court has provided several guidelines for bankruptcy courts to consider before approving a compromise. <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424 (1968) ("<u>TMT</u>")). As the Supreme Court explained in <u>TMT</u>, the bankruptcy court should

> "apprise [itself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise."

<u>TMT</u>, 390 U.S. at 424. Applying these standards to the case at bar, the court must consider the probability of success in litigation and assess the wisdom of the proposed compromise in determining whether the compromise is fair and equitable and in the best interests of the estate.

1. Probability of Success in Litigation

First, the court must determine whether the Claimants are likely to succeed in litigation. The Claimants asserted causes of action against the debtor for abuse of process and malicious prosecution. The Claimants further allege that the debtor predominantly controlled litigation in the Underlying Case even after his claims were dismissed.

A. Abuse of Process

Under South Carolina law, abuse of process is "the improper use of a regularly issued process." Whitfield Const. Co. v. Bank of Tokyo Trust Co., 338 S.C. 207, 223, 525 S.E.2d 888, 897 (Ct. App. 1999) (quoting Huggins v. Winn-Dixie Greenville, Inc., 249 S.C. 206, 210, 153 S.E.2d 693, 695 (1967). A cause of action for abuse of process will succeed where the plaintiff shows "an ulterior purpose and a willful act in the use of the process not proper in the conduct of the proceeding." Hainer v. Am. Med. Int'l., Inc., 328 S.C. 128, 136-37, 492 S.E.2d 103, 107 (1997).

The Trustee alleges that the debtor filed the complaint in the Underlying Case with the ulterior purpose of gaining land. In support of this allegation, the Trustee introduced a transcript of Brenda Babb's testimony in the Underlying Case as well as affidavits from Brenda Babb's counsel. During her deposition, Brenda Babb was asked about her objective in the lawsuit against the Claimants, to which she replied, "[My lawyers] thought it was money. I thought it was land, and I still think it's land." When pressed further by deposing counsel, Brenda Babb established that although the complaint alleged monetary damages, her actual objective was "to get the [Watson] Estate out." In addition, counsel for Brenda Babb submitted affidavits in which they stated they no longer understood Brenda Babb's objective. In a transcript of record dated March 1, 2005, counsel for Brenda Babb stated that "[t]he only thing that we can get Mrs. Babb in this lawsuit is money and that is not what Mrs. Babb wants." At hearing in the case at bar, Brenda Babb testified before the court. On cross-examination, Mrs. Babb confirmed that she and the debtor shared the same objective in the Underlying Case. Based on the testimony in the Underlying Case from Brenda Babb and her attorneys, the Trustee contends that the debtor and

Brenda Babb filed suit against the Claimants with the ulterior purpose of extorting the Claimants out of real property.

The Trustee further alleges that the debtor engaged in willful acts not proper in the conduct of the proceedings in the Underlying Case. As one example of improper conduct, the Trustee contends that the debtor attempted to represent LRCI in violation of South Carolina law. The South Carolina Supreme Court has held that a non-lawyer cannot represent a corporation in circuit or appellate courts. Renaissance Enters., Inc. v. Summit Teleservices, Inc., 334 S.C. 649, 653, 515 S.E.2d 257, 259 (1999).[1] In support of the Trustee's position, Stephen Futeral testified before the court. Mr. Futeral represented the Claimants in litigation with the debtor and Brenda Babb beginning in 2001 and was knowledgeable of the facts surrounding the Underlying Case. At hearing, Mr. Futeral established that the debtor initially filed the Underlying Case on behalf of LRCI and himself as an officer and director of LRCI. Mr. Futeral further established that the South Carolina Circuit Court dismissed the debtor's claims because he lacked authorization to bring suit on behalf of LRCI or to represent LRCI in circuit court. In addition, Mr. Futeral established that the debtor falsely alleged that LRCI had assigned its claims to the debtor. Therefore, the Trustee argues that the debtor attempted to circumnavigate Renaissance and maintain his position as an advocate in the Underlying Case by making false representations about his ability to file suit on behalf of LRCI. As another example of improper conduct, the Trustee asserts that the debtor abused the discovery process and dragged the Claimants through unnecessary litigation. At hearing, Mr. Futeral established that the debtor failed to attend duly-

---

[1] The debtor in the case at bar also attempted to represent a South Carolina corporation in Renaissance.

7

noticed depositions on nine occasions between May 1998 and August 2001. Mr. Futeral further established that approximately 230 pleadings and five appeals, two of which were interlocutory, had been filed in the Underlying Case. In whole, the Underlying Case had consisted of over 10 years of litigation and remained pending on the date of hearing. Thus, the Trustee contends that the debtor is liable for abuse of process because he purposely dragged the Claimants through extensive litigation in an attempt to drive up their attorney's fees and deprive them of the use of the Campground and Salt Marsh Cove. In response, the debtor argues that the compromise should not be approved because the Claimants are unlikely to succeed in their action for abuse of process. In support of the debtor's position, William Diggs testified before the court. Mr. Diggs is an attorney who represented the debtor in the Claimants' Action. At hearing, Mr. Diggs established that the Claimants' Action alleged various misconduct by the debtor during the Underlying Case. Mr. Diggs further established that the Claimants' Action ended in a mistrial after counsel for the Claimants introduced certain evidence of misconduct that occurred outside of the Underlying Case. Mr. Diggs also testified that he believed the Claimants' Action for abuse of process lacked merit and that the allegations related to the debtor's alleged misconduct should have been raised in the Underlying Case. On cross-examination, Mr. Diggs admitted that the Claimants' Action ended in a mistrial due to an evidentiary issue unrelated to the merits of the case.

    B. Malicious Prosecution

In addition to abuse of process, the Claimants brought an action against the debtor for malicious prosecution. Under South Carolina law, a plaintiff will recover in an action for malicious prosecution if it shows (1) the institution or continuation of original judicial proceedings, either civil or criminal; (2) by, or at the instance of, the defendant; (3) termination of

such proceedings in plaintiff's favor; (4) malice in instituting such proceedings; (5) want of probable cause; and (6) resulting injury or damage. Gaar v. North Myrtle Beach Realty Co., Inc., 287 S.C. 525, 528, 339 S.E.2d 887, 889 (Ct. App. 1986).

The Trustee contends that the Claimants can satisfy the elements of malicious prosecution and are entitled to relief. At hearing, Mr. Futeral established that the debtor caused the institution and continuation of civil proceedings against the Claimants by bringing an action on behalf of LRCI and himself as officer and director of LRCI. Mr. Futeral further established that these claims were dismissed with prejudice and in favor of the Claimants. Next, the Trustee argues that the debtor acted with malice during the institution and continuance of proceedings in the Underlying Case. The South Carolina Supreme Court has held that malice may be inferred from want of probable cause in a malicious prosecution case. See Parrott v. Plowden Motor Co., 246 S.C. 318, 322, 143 S.E.2d 607, 609 (1965). The Trustee contends that the debtor lacked probable cause to bring suit on behalf of LRCI or himself as officer and director of LRCI. In support of this contention, Mr. Futeral established at hearing that the South Carolina Circuit Court dismissed LRCI's claims for failure to state a claim upon which relief could be granted. In addition, the Trustee contends that the debtor acted maliciously by falsely asserting that Brenda Babb was both a LRCI shareholder and owner of a 1/3rd undivided interest in the Campground. At hearing, the Trustee introduced a deposition of the debtor, dated August 14, 2001, in which the debtor asserted that Brenda Babb owned more than half the acreage of the Campground. When asked by counsel for the Claimants how it could be that Brenda Babb owned more than half of the Campground despite contributing only 1/3rd of the purchase price, the debtor explained, "[i]t happens all the time." In addition to this deposition, Brenda Babb testified in the Underlying Case that she had an

9

agreement with Meares to receive a 1/3rd undivided interest in the Campground as compensation for the debtor's services as president. The Claimants disagreed with the debtor and Brenda Babb and asserted that Mrs. Babb agreed to take a 1/3rd undivided interest in the Campground in lieu of any interest in LRCI. The issue concerning Mrs. Babb's interest in LRCI came before the South Carolina Circuit Court in 2004. At the conclusion of trial, the circuit court did not find credible the testimony of the debtor or Brenda Babb regarding her interest in the Campground and LRCI. As a result, on June 11, 2004, the circuit court held that Mrs. Babb had relinquished her shareholder interest upon receiving her 1/3rd undivided interest in the Campground.

      The Trustee further contends that the debtor maliciously filed several lis pendens covering Salt Marsh Cove. In South Carolina, "an action 'affecting the title to real property' clearly allows the filing of a lis pendens by an interested party in order to protect their ownership interest in the property subject to litigation." Pond Place Partners, Inc. v. Poole, 351 S.C. 1, 17, 567 S.E.2d 881, 889 (Ct. App. 2002). "Where no real property is implicated, however . . . a notice of pendency of action need not be filed." Id. at 18, 890 (citing Shelley Constr. Co. v. Sea Garden Homes, Inc., 287 S.C. 24, 336 S.E.2d 488 (Ct. App. 1985)). "The proper action against a maliciously filed lis pendens is under abuse of process or malicious prosecution." Pond Place Partners at 31, 897. At hearing, Mr. Futeral established that the debtor filed at least three lis pendens covering Salt Marsh Cove between 1998 and 1999. Mr. Futeral further established that the debtor failed to bring a cause of action for specific performance, constructive trust, or similar action implicating real property. As a result, the Trustee alleges that the debtor lacked probable cause to file a lis pendens against Salt Marsh Cove and that such filings were malicious.

      The Trustee contends that the Claimants suffered significant damages as a result of the

debtor's prolonged attempts to allegedly extort the Claimants out of real property.  After the debtor filed for bankruptcy, the Claimants filed a proof of claim in the amount of $683,137.90 for, *inter alia*, attorney's fees and costs incurred in litigation with the debtor and Brenda Babb.  The Trustee further contends that the Claimants were deprived of the use of the Campground and Salt Marsh Cove during the course of litigation.  As a result, the Trustee contends that the debtor is liable for malicious prosecution.

In response, the debtor asserts that the Claimants' action against him for malicious prosecution is premature.  At hearing, Mr. Diggs established that the issues underlying the Claimants' action for malicious prosecution were the subject of litigation pending at the time of the Claimants' Action.  Mr. Diggs also asserted that the proceedings in which the debtor allegedly acted maliciously had not terminated in the Claimants' favor at the time of the Claimants' Action.  As a result, Mr. Diggs believed that the allegations for malicious prosecution were premature.  On cross-examination, Mr. Diggs established that he was not involved in the Underlying Case and was not fully aware of the events comprising such litigation.  In addition, Mr. Diggs admitted that even if the Claimants' action for malicious prosecution was premature, such action may be properly asserted against the debtor in the future.

C.  The Debtor's Involvement in the Underlying Case

The Trustee further asserts that the debtor is liable for abuse of process and malicious prosecution because the debtor exercised control over the proceedings even after his claims were dismissed.  In support of this assertion, Mr. Futeral established at hearing that Brenda Babb never appeared in court without the debtor and that the debtor was significantly involved in all litigation involving Mrs. Babb, including the drafting of pleadings.  Mr. Futeral further established that Mrs.

11

Babb eventually retained counsel but that counsel subsequently withdrew from representation due to the debtor's involvement in the case. At hearing, the Trustee introduced a transcript from a hearing on counsel for Mrs. Babb's motion to withdraw, dated March 1, 2005. During this hearing, counsel for Brenda Babb testified that "Mr. Babb controls this litigation. We did not take the case to represent Mr. Babb. We took the case only to represent Mrs. Babb . . . .We are representing Mr. Babb and that is not the individual we wanted to represent." The Trustee contends that the debtor is responsible for the misconduct alleged to have occurred throughout the Underlying Case due to the debtor's exertion of control over the proceedings both before and after his claims were dismissed.

2.  Assessment of the Proposed Compromise

Second, the court must assess the wisdom of the proposed compromise between the Trustee and the Claimants. The Compromise concerns the allowance of claims asserted in the Claimants' Action against the debtor for abuse of process and malicious prosecution. Under the terms of the Compromise, the Claimants would receive an allowed unsecured claim in the amount of $175,000.00 and would release all other claims that they might have against the bankruptcy estate. In return, the debtor would release all claims and actions against the Claimants which he raised or could have raised in the Claimants' Action and the Underlying Case. According to its terms, the Compromise does not inhibit the Claimants' right to assert claims against Brenda Babb or to seek payment of administrative claims.

The Trustee argues that if the Compromise is not approved, the Claimants' Action will be re-tried in South Carolina state court and result in substantial litigation. In support of the Trustee's position, Mr. Futeral testified that the Claimants' suit was pending in the South Carolina Circuit

Court after surviving a motion for summary judgment. Mr. Futeral also established that litigating a second trial would be costly to the Claimants and the estate. Mr. Futeral further established at hearing that the Claimants had already expended significant resources related to litigation in the Underlying Case and the Claimants' Action. On cross-examination, Mr. Diggs established that he expected a second trial to be litigated in full.

In addition, the Trustee contends that the amount of the claim is appropriate under the circumstances. At hearing, the Trustee established that the Claimants' original proof of claim, in the amount of $683,137.90, was based on the amount of attorney's fees and costs incurred during the course of litigation in the Underlying Case, requested interest on those attorney's fees, and reduced sales prices of lots resulting from lis pendens filed by the debtor. Also at hearing, the Trustee established that the total amount of attorney's fees incurred between 2001 and 2006 was approximately $250,000.00. Next, the Trustee calculated 70% of these incurred fees to arrive at the proposed amount of $175,000.00. The Trustee established at hearing that he exercised his best business judgment in arriving at the amount of the Compromise. The Trustee further established that the Claimants agreed to this modification of their claim as part of the Compromise.

The debtor opposes the Compromise and argues that the Claimants are not entitled to a claim in the amount of $175,000.00. In support of this argument, Mr. Diggs established at hearing that the proposed claim of $175,000.00 was higher than he anticipated. In addition, Mr. Diggs testified that the claim was premature because it was based in part on the Claimants' action for malicious prosecution. However, on cross-examination, Mr. Diggs acknowledged that he was unaware of the full extent of damages incurred by the Claimants and admitted that even if the action for malicious prosecution was premature, the Claimants were not precluded from bringing

13

such action at the conclusion of the Underlying Case.

3. Conclusion

For the following reasons, the court finds that the Compromise is fair and equitable and in the best interests of the estate. The Compromise relates to claims asserted by the Claimants against the debtor for abuse of process and malicious prosecution as a result of the debtor's alleged misconduct throughout the Underlying Case. The Claimants' Action was tried in the South Carolina Circuit Court but a mistrial was declared due to an evidentiary error unrelated to the merits of the case. As a result, the Claimants' Action will need to be tried again. At hearing, testimony on both sides indicated that a second trial could take years to resolve and was unlikely to settle. Importantly, the expense of such litigation would fall on the estate and would dilute any recovery to which the debtor's other creditors might be entitled. Conversely, the court finds that the Claimants' Action is supported by a colorable factual and legal basis. First, the court finds that the Claimants' action for abuse of process is meritorious. Through the testimony of Mr. Futeral and the evidence on record, the Trustee established at hearing that the debtor engaged in willful and improper acts with the intent of achieving an ulterior motive. Specifically, the debtor engaged in willful and improper conduct by filing suit on behalf of LRCI and himself as an officer and director of LRCI without any authorization from LRCI's shareholders, inventing a theory of assignment in an attempt to overcome the limitations imposed by South Carolina state law, and embroiling the Claimants in over ten years of litigation in the Underlying Case. As to the debtor's ulterior motive, both the debtor and Brenda Babb admitted that their main objective in the Underlying Case was to obtain land. As a result, the Trustee has demonstrated a reasonable probability of success as to the claim for abuse of process. Similarly, the court finds that the

Claimants are likely to succeed in their action for malicious prosecution. In addition to the unauthorized claims brought by the debtor on behalf of LRCI, the Trustee established that the debtor misrepresented Brenda Babb's interest in LRCI and the Campground. The debtor's misconduct culminated in the dismissal of claims of LRCI, the debtor, and Brenda Babb as shareholder in LRCI, leaving Mrs. Babb as the only plaintiff remaining in the Underlying Case. The Trustee further established that the debtor remained significantly involved in litigation in the Underlying Case even after his claims were dismissed. Finally, the debtor filed several lis pendens covering real property despite limiting his relief in the Underlying Case to monetary damages. In summary, the court finds substantial evidence in favor of the Claimants' actions for abuse of process and malicious prosecution. Furthermore, the Trustee has appropriately exercised judgment in recommending that the compromise be approved.

Based on the foregoing, the Trustee's motion to approve compromise is ALLOWED. The debtor's objection to the claim in the amount of $175,000.00 is OVERRULED.

"END OF DOCUMENT"